Judge Underwood
delivered the opinion of the Court.
In June, 1815, Patterson Hopper, made and published his last will and testament, which, in October, 1816, was duly proved, and admitted to record in the clerk’s office, of the Goochland county court, state of Virginia.
The testator devised his estate, a third to John H.
Mims; a third to his brother Anderson Hopper; and, a third fo Gaty Glass, for life, with remainder to the *104 heirs of her body; and in case of her death without issue, then her third to be equally divided between John H. Mims, and Anderson Sopper. John Mims, senior, and David Mims, junior, were appointed executors.
John H. Mims, being under age, by his next friend, filed his bill in chancery, against Anderson Hopper, Caty Glass, (now Daniel, and her husband) and David Mims, who alone had qualified as executor, in Virginia; charging, that previous to the death of the testator, he had removed a great portion of his property, to wit: negroes, to the county of Christian ;'that the same came to the possession of Anderson Hopper, who had ever since retained the possession and use of them; that said Anderson had also got into his hands, and converted to his use; horses 'belonging to the testator, besides, lands, bonds, notes, &c.; that Caty Glass, had likewise got into her possession, and converted to her use, a considerable portion of the estate; and, that the complainant had never received any share or portion of the estate, but the whole thereof, was held and enjoyed, by the acting executor, and other devisees, to the exclusion of the complainant. Wherefore, he prayed for a settlement and division of the estate, according to the will, and fbr general reliefi
Anderson Hopper answered, admitting that he had possession of twelve slaves, of the aggregate value of $2,500, possession of all being derived from his brother, the testator, except the increase, born after the mother’s had been delivered to him. He states, that in 1806, (the year after his brother came to the state with his negroes, and having, in the mean time, made the house of said Anderson, the home of said Patterson Hopper,) that he lent the testator $500, who then told him to take possession of three bf the negroes, to wit: old Sucky, and her sons, Lewis and Isaac, and to keep them until the money was returned, with interest. He also states, that the testator had mortgaged Jesse, one of the slaves, to-Davis, and that he, at the request of the testator, redeemed Jesse from Davis, by paying the debt with a negro named Sampson, his own property, and thereby got ■possession of Jesse; that, thereafter, the testator *105 again’mortgaged Jesse to-Shernwell, to obtain money; that he induced Edward Bradshaw to pay the mortgage debt, and he satisfied Bradshaw, again possessed himself of Jesse, who had been delivered over each time, to the mortgagee, to Work for the interest of the money, for such seems to be the proof.
Printer’s eer-publication, gaintt^non-residents, cop'j-statement " tha t it wa’a filed, i» in'«uf-court th at Aef/’tha®
Dismissal of bill, for watst °^”tjgges8a‘-l' Should b&, without pres-
In respect to the other slaves, Anderson Hopper does not state any formal delivery or contract, with his brother, by which he acquired possession of the slaves, and by which, his brother was divested of possession. He relies in his answer upon the length of his possession, ás a bar to the complainant’s claim. He sets up several money demands, against his brother, the testator, but does not make his answer a cross bill. He alleges that he has purchased the interest of Caty Glass, in the estate, and prays, if the complainant should succeed, that two thirds of the estate may be allowed to him.
The other defendants to the -bill did not answer. Process was not served on them. An orderof cation was granted- against them, as non-residents; and it is stated, that the printer’s certificate of its publication, had been filed. But the certificate is not copied in the record, and consequently, the proof before us, is insufficient to shew-, that the law has been complied with, or that such notice has been given the non-residents, by publication, as would authorize the court to proceed against them, as though process had been personally executed.
The circuit court dismissed the complainant’s bill, with Costs,'to reverse which decree, he has prosecuted an appeal to this court.
. As there is no sufficient proof before us, to shew that the order of publication was ever legally published, it might be said with propriety, as the case ; now stands before us, that if the dismissal h'ad bee¡ i. without prejudice, we would not have been authorize* d to disturb the decree. The executor, Mims, an-Caty Glass, were necessary parties, and if the con v plainant’s bill was dismissed, because they had m at been brought before the court, the dismissal shou’ Id *106 not have been absolute. For this cause, there is sui-ficient ground to reverse the decree.
musCbTS-terse, or seat-ute oí limita-protection, Therefore, def’t. holding bailee’or as a pawnoT pledge, is not statute ofy limitation
ifoat, if slaves pawned, are wi'ttinSO yearn,-chain-cell or may presume,,thiat demptfon bus been re'liu-qufghed..
But we appreben(} the circuit court dismissed the bill, believing that it was without merit, when the de-fence, relied on by Anderson Hopper, was considered, }f so, we are of opinion the circuit court erred. We cannot perceive the principle, upon which the court refused to compel a division of the slaves, in possession of Anderson Hopper, unless it was, that the ^cnS^} time, during which his possession had c.on-tinued, gave him a perfect title to the slavi s. The possession of Anderson Hopper, was not adverse, in our °P™on) and therefore, the statute of limitations cannot protect him.
In regard to old Sucky, Lewis and Isaac, he himself admits, they were pawned or pledged, to secure the payment of money. Jesse, also, came into his hands-, as assignee of a mortgage or pledge. In respect to the slaves, there is no pretence for saying, that possession has conferred title.
If the possession had been of twenty years dura-ti°n, before suit was brought, it might have justified the presumption, in case there were no repelling cir-cu ms lances, that the testator had relinquished title to *be slaves, in satisfaction of the debts; and a court of chancery then would not interfere, to disturb the possession. But there is nothing in this case, from which we are authorized to infer an abandonment of title, on the part of the testator, or devisee, Mims, or -the executor.
On the other hand, there is much to induce a contrary belief. In relation to these slaves, then, the possession of Anderson Hopper was perfectly consistent with the testator’s title. Nor is there any thing in the cause, which will enable us to say, that Ander- : son Hopper is protected by lapse of time, in respect i ü the other slaves. The testator was an unmarried t ian, and while in Kentucky, at least for a part of the t, me, he made the house of his brother his home; and It does not appear that he ever had arfy other home ii. , this state. The presumption is, his home continued at '.-his brother’s. The testator went to Virginia, and re turned, several times, leaving the slaves, during his *107 absence, at the house of Arfd^ew Hopper, where he resided with the negroes, when he first brought them to Kentucky, and where, the presumption is, he also resided upon his occasional visits to this.state.
The possession of the slaves, (if there were any not pledged,) was with the Jestatator, in point of fact, while he was at Anderson Hopper’s'house; and when he was absent, the possession was with said Anderson, as bailee, to be surrendered again, upon the owner’s-return.
The correspondence of the parties, .the refusal of. the testator to give a bill of sale, on the property, and. every circumstance in the cause, tends to prove that Anderson Hopper never had an adverse possession. He therefore, has no title to the slaves in controversy, hut what he derives under the pledges and mortgages, spoken of, and the will ,of his brother.
If all the devisees and acting executor, were before the court,, it should have proceeded to liquidate the amount of the claims,.for which, Anderson Hopper had liens upon the slaves, and if the value of'the services of the slaves,..to which the liens, attached, were not sufficient to discharge the sums, for .which liens-, were given, the deficiency should have been decreed to the defendant, Hopper; steps taken to secure its payment, and a division of the slaves ordered. But if the proper parties were not before the court, the bill should have been dismissed without prejudice..
As the cause must be sent back for further proceedings, we shall be somewhat more explicit, as to the principles, which must govern the final decree., The property in the defendant, Hopper’s, hands, being in this state, .at the time of the testator’s death, is liable to the satisfaction of bis debts. The executor, who. qualified in Virginia, before reducing it to possession, would be required to give bond and security, for a faithful administration uponit. . I. Dig. 536. Nothing is said of any debts due in this state, except, what may be-owing to the defendant, Hopper. The executor and devisees, all being before the court, the es*. tate can be settled among them, and divided, without danger to the rights of creditors.
loan which lender is to receive interest, and pawn^noTa™ counting for hire, is nsuri-s°not account-ingforhire,’ and will not he respected.
Bailee of slaves, is only liable for 5 years hire, suit!'101 0 But,where slaves are mortgaged or pledged, hire must be accounted for*. from date of mortgage or pledge, until debt and interest are discharged, then hire ceases till within 5 years before suit.
*108 The complainant, under the will, is entitled to one third-part of the estate, after the payment of debts, absolutely; and he may be entitled, upon a certain contingency, to the half of one.third more, after the death of Caty Glass. As the estate which may be in Yirginia, is not subject to-the controul of the courts in this state, it would be proper not to take that estate into consideration; but leave the parties unprejudiced, in respect to it, and to proceed to settle their rights, relative to the property in this state.
The court should first ascertain the amount of money due from the testator, to the defendant, Hopper, and the times when the sums are respectively due. The court should then ascertain, what negroes were pledged, to secure the payment of these sums; then interest, at the rate of six per cent, per annum, should be allowed the defendant, Hopper, and he should be charged with a reasonable hire, for the-negroes pleged or mortgaged, which hire, should beset off against the debt and interest.
The .bargain set out in the defendant, Hopper’s, answer, that he was to have interest, and to hold the negroes until.the money was paid, without accounting for hire, if the negroes were worth more than their food anc{ clothing, and taxes, is usurous, and ought not to be respected. If the hire should not equal the debts and interest, then, for the deficiency, the court must decree a sale of the slaves pledged, for the pur-Pose raising the balance of the debt and interest, If the hire should overgo the amount of the debts and interest, t.he defendant, Hopper, must be charged wjth tj,e surpius< the defendant, Hopper, is entitled to debts, for which he has no specific lien on the slaves, then such debts may be charged upon the slaves, and a. decree rendered for selling so many of the slaves, as will be sufficient to raise the amount of these debts.
^ there be slaves, not mortgaged or pledged, the defendant, Hopper, must account for their reasonable hire, to begin five years next preceding the institution of this suit, and to continue to Us termination, by final decree; but the hire of the slaves mortgaged and pledged, must begin with their delivery under *109 the mortgage or pledge» But if the hire of the slaves, mortgaged or pledged, is sufficient to discharge the debts, and extinguish the lien, so as to leave a period of time, running between the discharge of the debts, by the hire, and the commencement of five years, next before the institution of this suit, for such period so intervening, no hire is to be charged against the defendant, Hopper, for to that extent, he would be protected at law, and must also,-be in chancery, from the payment of hire, by the statute of limitations. But, hire must be charged for the negroes mortgaged or pledged, for the five years, next preceding the institution of this suit, even if their hire should be sufficient to pay the debts, many years before the beginning of said five years. If the complainant labored under the disability of non-age, it may be that the defendant, Hopper, is not protected by the statute of limitations, against the payment of a reasonable hire for the slaves, during the whole period he has had their service, since the testator’s death. This will be regulated by the future preparation of the suit. If the hire of the slaves should pay the debts, for which liens were created on slaves, and leave a surplus, such surplus may be setoff against debts, for which no liens'were given.
In estimating reasonable hire of slaves, taxes, medical attendance, raising, and all reasonable expenses,-na»ust be deducted.
In estimating the reasonable hire of the slaves, it must be done, deducting all reasonable charges and expenses, such as taxes, medical attendance, raising, &c. The question in such cases is, what does the net profit of the slaves, or the value of their services, amount to ? All the preceding facts, may, most properly be ascertained by a commissioner, to be appointed for that purpose; and who may be authorized to take evidence on the various points which may arise, and to return the evidence, with his report. If all the defendant, Hopper’s, debts have been extinguished by the hire of the negroes, the court will decree a division, and have one third allotted to the complainant, reserving any right which may accrue to him, under the will, after the death of Caty Glass, (now Daniel.)
We think the court erred, in rejecting the answer of Anderson Hopper, filed to the bill, exhibited by *110 Mims. We see no reason why a man’s answer, in. c^ancery> sworn to by him, should not be admitted as. against him, whenever the subject matter of the answer is again litigated, when b.e is concerned, as a party. See Roberts vs Finnell, III. Mon. 249.
Denny, for appellant,.
The decree of the circuit court is reversed, and the cause remanded, for proceedings, in conformity to this-opinion. • •
The appellant must recover his costs.